```
ANTERO, TORMEY, & PETRIN PC
PETER J. TORMEY, California SBN 269869
Email: PT@AnTLegal.com
MICHAEL R. KASIN, California SBN 318739
Email: Mkasin@antlegal.com
101 Gregory Lane, #46
Pleasant Hill, CA 94523
Telephone: (925) 352-9842


Attorneys for Plaintiffs;
Anonomatic Inc.
```

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANONOMATIC INC.,<br><br>         Plaintiff,<br><br>    vs.<br><br>SKYFLOW INC.,<br><br>         Defendant. | Case No. 3:22-cv-01469-JD<br><br>**PLAINTIFF'S RELY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      TBD<br>Time:      TBD<br>Judge:     Hon. James Donato<br>Courtroom: 11, 19th floor |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 4

II. REPLY TO OPPOSITION ............................................................................................. 4

    A. DEFENDANT ADMITS IT WILL NOT SUFFER SERIOUS HARM. ........................................... 4

    B. THE MOTION IS TIMELY ................................................................................................ 5

    C. DEFENDANT WILL NOT INVALIDATE THE TRADEMARK ................................................. 7

        1. The Mark is not generic ............................................................................................ 7

        2. Defendant conflates terms to allege industry-wide use .......................................... 8

        3. Defendant's exhibits show Mark was not in wide-spread use .................................. 9

        4. The patent database shows the Mark is not widely used ..................................... 10

III. CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 USPQ2d 1134 ...................................................... 4

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,* 198 F.3d 1143, 1146-52, (9th Cir. 1999) ............................................................................................................................. 7

*Official Airline Guides, Inc. v. Churchfield Publications, Inc.*, (756 F. Supp. 1393, (9th Cir. 1993) ............................................................................................................................. 6

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) ............................................................ 10

*Surgicenters of Am. v. Med. Dental Surgeries*, 601 F.2d 1011 (9th Cir. 1979) ..................................... 7

*Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 226 U.S.P.Q. 703 (6th Cir. 1985), cert. denied, 476 U.S. 1158, 90 L. Ed. 2d 719, 106 S. Ct. 2277 (1986).) ............................... 6

**Statutes**

1141f(b) ........................................................................................................................................... 4

15 U.S. Code § 1115(a) ................................................................................................................... 7

15 U.S.C. § 1116(a) ........................................................................................................................ 4

15 U.S.C. §§1057(c) ....................................................................................................................... 4

**Treatises**

McCarthy on Trademarks and Unfair Competition § 31:21 (5th ed.) .............................................. 6

PLAINTIFF'S REPLY TO OPPOSITION TO PRELIMINARY INJUNCTION
Case No. 3:22-cv-01469-JD
- 3 -

## I.     INTRODUCTION

Skyflow, Inc. ("Defendant") alleges in its "Opposition to The Motion For Preliminary Injunction" ("Opposition") that Plaintiff Anonomatic, Inc. is not entitled to an injunction. They cited alleged prior use, trademark invalidity and the balances of equities as the major reasons to deny the injunction. However, the Defendant's Opposition has little evidence to support these allegations. On the contrary, Defendant's evidence and arguments make it clear that an injunction must be granted to avoid harming the Plaintiff further.

The Plaintiff acquired common-law rights to "PII Vault" ("Mark") at least as early as June 16, 2020 when it went live with the web site www.PIIVault.com. Soon thereafter Plaintiff filed an intent-to-use application on the Principle Register of the US Trademark Office on September 8, 2020 and the Mark registered on July 20, 2021. (Decl. of Matthew Fleck, Exhibit 1, Motion for Injunction) Under 15 U.S.C. §§1057(c) and §1141f(b), filing any application for registration on the Principal Register, including an intent-to-use application, constitutes constructive use of the mark, provided the application matures into a registration as it did here. (See *Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 USPQ2d 1134 (TTAB 2013)). Before registering the Mark, the Trademark Office published the Mark for any public opposition and Skyflow did not object.

Once registered the Mark enjoys the presumption of validity (15 U.S. Code §1115(a)). Pursuant to Fed. R. Civ. P. 65, a preliminary injunction may be granted if immediate and irreparable injury will result to the movant as is the case here.

## II.     REPLY TO OPPOSITION

### A.     Defendant admits it will not suffer serious harm.

Section 34(a) of the Lanham Act (15 U.S.C. § 1116(a)) provides that irreparable harm should be presumed upon a finding of infringement or likelihood of infringement for the purposes of imposing permanent and preliminary injunctions, respectively. The Defendant has provided no evidence to rebut the presumption of irreparable harm to the Plaintiff and instead have admitted they

use the Mark in the sale of goods in Defendant's answer to special interrogatories. "The services that Skyflow describes with the term "PII Vault" are services for providing a means to secure data containing personally identifiable information. Skyflow's business in part includes such services and related products." (Defendant's answer to special interrogatories no. 5). Because they intentionally and literally infringe a registered trademark in the same industry, a finding of infringement is highly likely and, as shown below, the Defendant will not prevail on invalidating the Mark. Accordingly, the Defendant has not met their presumptive burden.

Moreover, the Opposition does not address the Defendant's admission question 6 that "No profits were derived from Skyflow's use of PII Vault because it is a generic term (not a mark) to describe the function of certain of Skyflow's services. Purchasers of Skyflow's services did not make decisions based on Skyflow's use of this term" (Plaintiff's First Set of Interrogatories, question 6). Defendant's admission clearly indicates little or no harm to the Defendant if an injunction issues.

The balance of hardship tips sharply in Anonomatic's favor.

**B.    The Motion is Timely**

Defendant has recently increased marketing activities using the Mark thereby destroying any settlement possibility and instigating the necessity of this motion. The attached Exhibit A by Michael Kasin shows Defendant's purchase of the Mark on Google AdWords-- paid promotional use of Plaintiff's registered trademark. Figure 1 shows a search on Google for the phrase "PII VAULT" that returns Defendant's web page as the number 1 entry and is clearly labeled "Ad." For comparison, figures 2 and 3 show searches for "PII" and "Vault" that do not return Defendant's web site. By taking the top position in search results Defendant is directing potential customers away from the Plaintiff's web site and harming Plaintiff's promotional activities by sending potential customers elsewhere. Moreover, Defendant's paid promotion using the Mark is indicative of their effort to genericize and

PLAINTIFF'S REPLY TO OPPOSITION TO PRELIMINARY INJUNCTION
Case No. 3:22-cv-01469-JD                                                                                           - 5 -

dilute the Mark therefore rendering it worthless -- the definition of irreparable injury.   (Decl. Michael Kasin, Ex. A).

Progressive encroachment on the plaintiff's rights may excuse a delay in filing a motion for a preliminary injunction so long as the change in the defendant's conduct is material. The rule of encroachment allows plaintiffs to tolerate de minimis or low-level infringements and act promptly when a junior user either gradually edges into causing serious harm or suddenly expands or changes its mark ("McCarthy on Trademarks and Unfair Competition" § 31:21 (5th ed.)). Plaintiff is not yet aware of when the Defendant began buying Google AdWords, but it is apparent that it is misdirecting customers away from Plaintiff's web presence.

"A reasonable businessman should be afforded some latitude to assess both the impact of another's use of an allegedly infringing trademark as well as the wisdom of pursuing litigation on the issue." (*Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 226 U.S.P.Q. 703 (6th Cir. 1985), cert. denied, 476 U.S. 1158, 90 L. Ed. 2d 719, 106 S. Ct. 2277 (1986).) There are many reasons why a company may delay asking for a preliminary junction. These include insufficient information until a modicum of discovery is provided, the sheer expense of the process, the likelihood of settlement, setting a valuation on the bond, and the effect the infringer has on the competitive landscape. Moreover, trademarks get more valuable over time as more of the purchasing public becomes aware of the trademark.  Courts may consider "the time and expense of litigation" in deciding on injunctive relief (*Official Airline Guides, Inc. v. Churchfield Publications, Inc.*, (756 F. Supp. 1393, (9th Cir. 1993) (considering it was reasonable for plaintiff to wait three years and not file an action until it received a sufficient level of actual confusion and possible damage).

In the nine months since this case was initiated (not two years as alleged by Defendant), efforts at settlement quickly reached an impasse as did efforts pre-litigation.  However, given the timeliness factor of acquiring trademark rights (first to use as common law trademarks), some discovery is

warranted before taking an extraordinary remedy like an injunction.

Given the circumstances, the motion is timely and appropriate.

### C.   Defendant Will Not Invalidate the Trademark

#### 1. The Mark is not generic

The trademark PII VAULT enjoys the presumption of validity because it is federally registered (15 U.S. Code § 1115(a)). Moreover, the presumption of validity places the burden of proving genericness upon the defendant. (See 15 U.S.C. S 1057(b). This presumption of validity is because the US Trademark Office performed a thorough search before issuing a notice of allowance. Moreover, once allowed, the trademark examiner required proof of use in commerce which was provided. At no time did the trademark examiner, after performing a diligent search, allege the Mark was in industry-wide use, generic, or merely descriptive. Instead, the trademark examiner agreed with the Plaintiff that the Mark was entitled to registration. The trademark examiner addressed the issue of genericness when it required a disclaimer for the acronym "PII" before allowing the registration.

The Defendant erroneously asserts the fallacy that a generic term plus another generic term somehow equals a generic trademark. However, In *United States Jaycees v. San Francisco Junior Chamber of Commerce*, the court rejected the rather blunt "generic plus generic equals generic" approach to evaluating composite terms. The *Jaycees* court, in affirming over the dissent, implicitly rejected evaluating genericness of composite terms by breaking them down into their parts. (*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,* 198 F.3d 1143, 1146-52, (9th Cir. 1999). *Filipino Yellow Pgs. v. Asian Journal Pub*, 198 F.3d 1143, 1148 (9th Cir. 1999) ("the "ultimate test" of genericnessness is "how a term is understood by the consuming public." Citing *Surgicenters of Am. v. Med. Dental Surgeries*, 601 F.2d 1011 (9th Cir. 1979) at 1017").

Defendant's assertion that "If a proposed mark consists of generic terms, it cannot serve as a

PLAINTIFF'S REPLY TO OPPOSITION TO PRELIMINARY INJUNCTION
Case No. 3:22-cv-01469-JD                                                                          - 7 -

trademark or support a registration" is false. Furthermore, Defendant offers no evidence of genericness besides the arguments of counsel.

### 2. Defendant conflates terms to allege industry-wide use

The Defendant disingenuously obfuscates the issue by combining the Mark with other terms. "Continuously from 2016 to this day, Skyflow and its principals have consistently used "PII Vault," and sometimes more cumbersome or less precise synonyms like "Privacy Vault," "Privacy Data Vault" and – also ostensibly challenged by AI's motion – "PII Data Privacy Vault" to describe its product." (Defendant's Opposition p. 2 ll. 12- 15). Defendant then proceeds to show uses of these other allegedly synonymous terms as proof they used the Mark before the Plaintiff, and that the Mark is in industry-wide use. Relying on this obfuscation, Defendant provides exhibits alleging use of the Mark, however, those exhibits do not show the Mark. Instead, they mostly show use of the alleged synonyms. Some examples from the exhibits offered to show use of the Mark do not use the Mark at all:

1. Ex A shows the sale of "Skyflow Vault"
2. Exhibit F (Under Seal) uses "Privacy Data Vault"
3. Exhibit G says "Skyflow is a privacy vault for PII data."
4. Exhibit H uses "data privacy vault"  (trying to explain to users what his emails mean)
5. Exhibit O uses "Privacy Data Vault for Customer Data"
6. Exhibit X  shows the sale of a "Skyflow Identity Vault"

Throughout the Opposition, Defendant circumvents the issue by conflating the Mark with other terms to maintain this obfuscation. For example, "By 2019, Skyflow was having concrete negotiations with customers about purchasing its cloud-based version of a data privacy vault or PII vault" (Opposition p. 2), attempting to merge the two terms.

The Opposition is rife with examples of confusing synonyms with the actual Mark.  As another

example, the Defendant conflates the various terms when it alleges "We had been referring to our data vaults by various generic names since we had conceived of the company and had been talking to investors, clients and prospective employees. These included "Data Privacy Vault," "PII Privacy Vault," and "PII Vault" and these terms appear in emails and other materials I shared with customers and investors about our service between 2016 and the launch of our business." (Decl. Sharma, p. 4).

### 3. Defendant's exhibits show Mark was not widely used

It appears the only direct use of the Mark was by Mr. Shamra the CEO of Defendant. These appear in email communications to a small circle of associates of Mr. Sharma. Even if these are accurate, they do not show widespread use of the term but instead are mostly explanations describing what he believes "PII Vault" is and for follow up after discussing his product idea. If the phrase "PII Vault" was in industry-wide use, it would need no explanation.

Examples of Defendant's explanations include at least the following exhibits:

- Exhibit F does not use the Mark, but instead explains what a "Privacy Data Vault" is and how it operates. If PII Mark was in widespread industry use, the author of this exhibit would have used the term and not needed an explanation for it.

- Exhibit M also does not use the Mark, but instead is Defendant explaining to TechCrunch.com, a widely read industry journal, what his product is. This article appears to be from May 21, 2020. If "PII Vault" was widely used, an industry journal would have used the term – but it did not.

- Sharma Ex C -- Defendant's emails to technical partners show an explanation is needed. For example, "they could store it all in a cloud based service that uses modern techniques like homomorphic encryption, etc. to securely tokenize/encrypt as applicable the data, wrap per app policies around it,…"

- Exhibit G is an email explaining "Skyflow is a privacy vault for PII data."

- Exhibit H " Skyflow is building a data privacy vault for zero-trust architecture."
- Exhibit O "We are building a "Privacy Data Vault for Customer Data" - to store, manage and share PII data – by storing it tokenized/encrypted while still allowing for all the 'sensitive data' to be used in workflows and to be shared & collaborated on with partners."

In all these examples the Mark was either not used or the definition of "PII Vault" was not known and needed explanation.

The internal emails between Mr. Sharma and his coworkers and investors are insufficient to show widespread use, but only show a very limited use of the term. Moreover, the Defendant went to great lengths to keep these exhibits out of the public eye because they were filed under a protective order. It is wholly inconsistent to use secret documents as evidence of public use of the Mark.

The evidence presented shows the Mark was not widely used.

**4. The patent database shows the Mark is not widely used**

The attached Exhibit B from Michael Kasin shows searches of the entire US Patent database. The term "PII Vault" only appears in 4 patents and patent applications. (Decl. Michael Kasin, Figure 4, patent applications that mature into patents are counted as one.) The attached exhibit A figure 5 shows over 28,000 documents using "PII", yet only 4 reference a "PII VAULT." And of those, only two were published before the Mark was in use by the Plaintiff. The patent database is the largest repository of technology ever created, if the Mark was in wide-spread use, surely the Mark would be in there more than 4 times.

The patent data exemplifies how narrowly used "PII Vault" is. The new term even had to be defined in the patent applications. It is axiomatic that in a patent specification, an inventor may act as his own lexicographer and define a term used in the patent claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc). Here, the patent prosecutor defined the term so the reader

would understand it. This indicates the term was not in everyday use, but instead required a detailed definition. Some examples include:

> PII vault is 207, e.g., a data structure, contained within or accessible by PII content analysis engine 206. For example, during installation of personal identifiable information theft detection and remediation application 106, the user inputs personal identifiable information of the user. This personal identifiable information is then stored, e.g., in encrypted or otherwise secure form, in PII vault 207." (Decl. Sharma, ex W par 41).

Here, the patent cited by the Defendant actually shows the definition of a new term. The definition is needed because the term is not widely used and therefore not generic as alleged. Moreover, there is a seven-year gap before it is found in another published patent application, and those uses were after registration of the Mark. The rare usage further indicates the Mark is not a widely used term.

### III. CONCLUSION

In view of the foregoing, the evidence proffered by the Defendant merely shows the term "PII Vault" was used by Mr. Sharma in emails to a few of his close associates. The Plaintiff can show the Mark was not widely used in the industry and it is not generic. The Plaintiff will prevail at trial.

Additionally, Defendant admits it will not suffer much harm if the injunction were granted and granting the injunction now will protect the Plaintiff's rights from Defendant's irreparable injury.

Plaintiff requests issuance of the preliminary injunction as soon as practical.

Date: December 13, 2022                                  Respectfully Submitted

                                                  By:   /s/ Peter Tormey
                                                        Peter Tormey
                                                        Michael Kasin

                                                        Attorneys for Plaintiff Anonomatic, Inc.

**PROOF OF SERVICE**

I, Peter Tormey, certify under penalty of perjury that I served the foregoing PLAINTIFF'S RELY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION and associated Appendix on DEFENDANT Skyflow Inc. using the agreed upon method of emailing a true and correct copy to its counsel of record as follows:

> VERSO LAW GROUP LLP
> GREGORY S. GILCHRIST
> PAYMANEH PARHAMI
> 209 Kearny Street., 3rd Floor
> San Francisco, CA 94108
> Telephone: (415) 534-0495
> Facsimile : (270) 518-5974
> Email: greg.gilchrist@versolaw.com
>        paymaneh.parhami@versolaw.com

Executed on December 13, 2022

/s/ Peter Tormey
Peter Tormey

Pleasant Hill, California

PROOF OF SERVICE
Case No. 3:22-cv-01469-JD

- 1 -